IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

JEFF KENNEDY and
JACKSON KENNEDY,

   Plaintiffs,

vs.

NICHOLAS SCHLOSSER,
CHAD LEITZEN, and
THE CITY OF DUBUQUE, IOWA,
a Municipal Corporation

   Defendants.

No. C11-1032

RULING ON MOTION TO STRIKE TESTIMONY

TABLE OF CONTENTS

I. INTRODUCTION .................................. 2

II. PROCEDURAL HISTORY ........................... 2

III. RELEVANT FACTS ............................... 2

IV. DISCUSSION .................................... 3
 A. *Does Waller's Disclosure Comply with Rule 26(a)(2)(B)?* ......... 3
 B. *Do Waller's Opinions Comply With* FEDERAL RULE
  OF EVIDENCE *702?* ............................ 5
  1. *The Officers' Actions "Constituted Excessive and
   Unnecessary Force"* ......................... 7
  2. *The Officers' Actions "Were Inconsistent with Department
   Standards and Expectations"* .................... 10
  3. *Compliance with The Law Enforcement Code of Ethics* .... 10
  4. *Dubuque Police Department Practice is Inconsistent with Its
   Stated Policies* ............................ 11

V. SUMMARY ..................................... 12

VI. ORDER ....................................... 12

## I. INTRODUCTION

This matter comes before the Court on the Motion to Strike Testimony of Dennis Waller (docket number 19) filed by the Defendants on October 31, 2012, and the Resistance (docket number 20) filed by the Plaintiffs on November 19. Pursuant to Local Rule 7.c, the motion will be decided without oral argument.

## II. PROCEDURAL HISTORY

On August 31, 2011, Plaintiff Jeff Kennedy filed a complaint, pursuant to 42 U.S.C. § 1983, seeking damages following an incident on September 1, 2009. Kennedy claims his civil rights were violated when police officers Nicholas Schlosser and Chad Leitzen assaulted him and used excessive force.[1] Kennedy seeks compensatory and punitive damages, and also claims damages for "loss of society and companionship" on behalf of his minor child, Jackson Kennedy. Defendants filed an answer on November 8, 2011, denying the material allegations and asserting certain affirmative defenses.

A final pretrial conference is scheduled on January 4, 2013. A jury trial is scheduled on January 28, 2013.

## III. RELEVANT FACTS

On May 1, 2012, Kennedy timely served an expert witness disclosure pursuant to FEDERAL RULE OF CIVIL PROCEDURE 26(a)(2). One of the experts identified by Kennedy was Dennis K. Waller. The expert disclosure states that Waller is expected to testify consistent with his written report, a copy of which was attached.[2] Also attached was Waller's curriculum vitae, showing his qualifications, publications, and prior testimony.

---

[1] Also named in the initial complaint was Police Chief Mark Dalsing and "the Dubuque Police Department." Kennedy voluntarily dismissed those two defendants, however, on February 28, 2012.

[2] *See* docket number 19-2 at 8-26.

2

A statement of compensation was also attached. Waller's opinions were supplemented in a report dated October 4, 2012.[3]

On October 31, 2012, Defendants filed the instant motion to strike, asking the Court to prohibit any expert testimony by Dennis Waller. First, Defendants argue the expert witness disclosure for Waller fails to comply with FEDERAL RULE OF CIVIL PROCEDURE 26(a)(2)(B). Second, Defendants assert that Waller's proposed testimony "fail[s] to meet the minimum criteria necessary to provide expert testimony pursuant to FED. R. EVID. 702." Kennedy resists.

## IV. DISCUSSION

### A. Does Waller's Disclosure Comply with Rule 26(a)(2)(B)?

A party must disclose to the other party the identity of any witness it may use at trial to present expert testimony. FED. R. CIV. P. 26(a)(2)(A). Here, Kennedy retained Dennis Waller to provide expert testimony, and timely disclosed Waller's identity on May 1, 2012. "[I]f the witness is one retained or specially employed to provide expert testimony in the case," then a written report is required. Rule 26(a)(2)(B). The report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

FED. R. CIV. P. 26(a)(2)(B)(i)-(vi).

---

[3] *Id.* at 27-32.

The expert disclosure served by Kennedy refers to Waller's written report and states that he "is expected to testify consistent with his written report."[4] Waller's nine-page report – which is in the form of a letter dated April 30, 2012, to Plaintiffs' counsel – sets forth four "opinions," denominated A-D.[5] If permitted to do so, Waller will testify the officers used "excessive and unnecessary force" to take Kennedy to the ground, the officers' actions were "inconsistent with department standards and expectations," the officers' actions were "reckless, unnecessary, untimely, and provocative," and the "actual practice of the Dubuque Police Department is inconsistent with their stated policies." Following each of these conclusions, Waller identifies the basis for reaching his opinions.

In their brief, Defendants acknowledge that Waller's written report "attempts to set forth the basis and reasons for the opinions he has expressed," but argues that the opinions are "flawed at their inception" because they are "simply his interpretation of the course of events leading to the arrest of Plaintiff."[6] Defendants also assert that Waller's report is "false and misleading" in its assertion that "[t]he basic methodology I use has always been found acceptable in the 500 plus cases I have reviewed for matters before federal courts, state courts, and administrative hearings."[7] Defendants cite three cases in which Waller's testimony has been rejected.

The Court believes that Defendants' first argument is misplaced. That is, Defendants argue that the opinions expressed by Waller in his report are "flawed" based on his acceptance of Plaintiffs' version of the events. Rule 26(a)(2)(B) requires a party to provide certain details regarding an expert's qualifications, opinions, and basis for those

---

[4] *See* Plaintiffs' Expert Disclosure (docket number 19-2) at 2.

[5] *See* Letter from Dennis Waller to Christopher D. Stombaugh, dated April 30, 2012 (docket number 19-2) at 5-8.

[6] Defendant's Brief (docket number 19-1) at 3.

[7] *Id.* at 4.

4

opinions. The purpose of a written report is to convey the substance of the expert's opinion, so that the opponent will be ready "to rebut, to cross-examine, and to offer a competing expert if necessary." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 762 (7th Cir. 2010). When a party fails to provide information in compliance with Rule 26(a), the Court "may exclude the information or testimony as a self-executing sanction unless the party's failure to comply is substantially justified or harmless." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008).

Here, Plaintiffs' expert disclosure regarding Dennis Waller clearly complies with Rule 26(a)(2)(B). It summarizes Waller's opinions and the basis for those opinions. *Metavante Corp.*, 619 F.3d at 762 (the purpose of a written report "is not to replicate every word that the expert might say on the stand," but is instead intended to convey the substance of the expert's opinion). The expert disclosure also identifies Waller's qualifications, publications, a list of cases in which he has testified, and a statement of compensation. In determining whether Plaintiffs' disclosure complies with Rule 26(a)(2)(B), the Court will not weigh the *merits* of the opinions, or otherwise determine if they are "flawed." Defendants' claim in this regard is more properly considered in the second ground urged in its motion to strike.

### B. Do Waller's Opinions Comply With FEDERAL RULE OF EVIDENCE 702?

Next, Defendants ask the Court to exercise its "gatekeeping function" and prohibit Waller from testifying. Defendants argue that "Waller's opinions are irrelevant, conclusory, and will not be helpful to the jury."[8] Defendants do *not* challenge Waller's qualifications as an expert, but argue instead that his methodology is flawed and his opinions "invade the province of the jury."

Federal Rule of Evidence 702 controls the admissibility of opinion testimony by expert witnesses. The Supreme Court held in *Daubert v. Merrell Dow Pharmaceuticals*,

---

[8] Defendants' Brief (docket number 19-1) at 4.

5

*Inc.*, 509 U.S. 579, 592-93 (1993), that when faced with a proffer of expert scientific testimony, a trial judge must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Six years later, in *Kumho Tire Co., Ltd. v. Carmichael*, the Court held that *Daubert*'s "gatekeeping" obligation, requiring an inquiry into both relevance and reliability, applies not only to "scientific" testimony, but to all expert testimony. 526 U.S. 137, 148 (1999). In 2000, FEDERAL RULE OF EVIDENCE 702 was amended in response to the holdings in *Daubert* and *Kumho Tire*. An expert witness "may testify in the form of an opinion" if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

While an expert witness's testimony "is not objectionable just because it embraces an ultimate issue," FED. R. EVID. 704, opinions that "merely tell the jury what result to reach" are not admissible. *Lee v. Andersen*, 616 F.3d 803, 809 (8th Cir. 2010) (quoting FED. R. EVID. 704 advisory committee's note). "The touchstone for the admissibility of expert testimony is whether it will assist or be helpful to the trier of fact." *Id.* at 808 (quoting *McKnight ex rel Ludwig v. Johnson Controls, Inc.*, 36 F.3d 1396, 1408 (8th Cir. 1994)). If the expert testimony is within the jury's knowledge or experience, then it remains subject to exclusion "because the testimony does not then meet the helpfulness criterion of Rule 702." *Id.* at 809 (quoting *United States v. Arenal*, 768 F.2d 263, 269 (8th Cir. 1985)). With these general principles in mind, the Court turns to the four opinions expressed by Waller in his expert report.

### 1. The Officers' Actions "Constituted Excessive and Unnecessary Force"

First, Waller opines that the officers used excessive and unnecessary force when they punched Kennedy in the head and struck him multiple times with a baton after he was taken to the ground.[9] In reaching that conclusion, Waller has apparently adopted those facts most favorable to Kennedy. For example, Waller states that while Kennedy was on the ground in a fetal position, he was "begging for someone to make them stop." Waller also appears to render medical opinions. In his supplemental report, Waller opines that after he was taken to the ground, "it is inconceivable that Mr. Kennedy with two hands incapable of forming fists could continue to punch Officer Leitzen." Waller also opines that the photographs of Kennedy's injuries "are consistent with Mr. Kennedy's perception that his head was being targeted."

These opinions are not based on Waller's specialized knowledge or experience, but are simply his view of the testimony. That is, a jury can weigh the evidence and decide whether Kennedy was "begging for someone to make them stop," without any help from Waller. Furthermore, Waller lacks the medical expertise to testify whether Kennedy's injuries would have rendered him incapable of making a fist and punching the officer, or are consistent with Kennedy's "perception that his head was being targeted."

There is no "blanket rule" regarding the admissibility of expert testimony in excessive force cases. *Kopf v. Skyrm*, 993 F.2d 374, 378 (4th Cir. 1993).

> The facts of every case will determine whether expert testimony would assist the jury. Where force is reduced to its most primitive form – the bare hands – expert testimony might not be helpful. Add handcuffs, a gun, a slapjack, mace, or some other tool, and the jury may start to ask itself: what is mace? what is an officer's training on using a gun? how much damage can a slapjack do? Answering these questions may often be assisted by expert testimony.

---

[9] Letter from Dennis Waller to Christopher Stombaugh dated April 30, 2012, at 5.

7

*Kopf*, 993 F.2d at 379 (quoted with approval in *Jennings v. Jones*, 499 F.3d 2, 15 (1st Cir. 2007)).

It appears that Waller is qualified, by training and experience, to render appropriate opinions regarding police practices and procedures. Testimony regarding the use of force and proper police procedures, including the use of a baton, may be helpful to the jury. While Waller can testify generally regarding proper police practices, however, he will not be permitted to opine that the officers' actions here "constituted excessive and unnecessary force." Witnesses with personal knowledge will testify as to the events. The jury will then decide what testimony they believe, and what testimony they disbelieve. *Westcott v. Crinklaw*, 68 F.3d 1073, 1076 (8th Cir. 1995) (the issue of credibility should be "left in the exclusive province of the jury"). The jury will then decide, based on the evidence they find most credible, whether Defendants used excessive force. Expert testimony which merely tells the jury what result to reach must be excluded. *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) (finding that the trial court erred in permitting expert testimony that the defendant's conduct was not "justified under the circumstances," not "warranted under the circumstances," and "totally improper"). *See also Rollins v. Smith*, 106 Fed. Appx. 513, 514 (8th Cir. 2004) (finding the trial court properly excluded the testimony of the plaintiff's expert witness in an excessive force case).

In *Peterson v. City of Plymouth*, 60 F.3d 469 (8th Cir. 1995), the plaintiffs brought a section 1983 action, alleging Fourth Amendment violations and false imprisonment. The defendants – three police officers – introduced the testimony of a "police practices and procedures expert." The expert testified regarding "his opinion as to why each action the officers took was consistent with 'nationally accepted standards.'" *Id.* at 475. The Eighth Circuit concluded it was an abuse of discretion to allow the testimony and remanded the case for new trial. The Court found that the expert's testimony did not "assist the jury" in its role of determining the disputed facts. *Id.* Similarly, I believe that while Waller can testify in the instant action regarding standard police practices, it is for the jury to resolve

the disputed evidence and decide whether the officers complied with accepted practices here.

An Illinois court – also addressing the admissibility of Waller's opinions – recently reached the same conclusion:

> The trouble with Mr. Waller's opinions, as the defendants contend, is that they merely note conflicting testimony and purport to weigh factual disputes that the jury needs no assistance in resolving. It is a fundamental premise of our trial system that "determining the weight and credibility of witness testimony . . . 'belongs to the jury who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.'" "An expert witness may not usurp the jury's function to weigh evidence and make credibility determinations."

*Davis v. Duran*, 277 F.R.D. 362, 370 (N.D. Ill. 2011) (internal citations omitted). *See also Wells v. City of Chicago*, 2012 WL 116040 (N.D. Ill.) at *10 (excluding those portions of Waller's testimony which "merely 'drew inferences from the evidence,' which the jury could draw equally well."); *Florek v. Village of Mundelein*, 649 F.3d 594, 602 (7th Cir. 2011) (noting that expert testimony might not be helpful in situations "where police used their bare hands in making an arrest, the 'most primitive form' of force").

In summary, Waller may testify generally regarding the use of force and proper police procedures. For example, he may testify regarding the proper use of a baton. However, Waller will not be permitted to recount the evidence, accept those portions which he finds more credible or "conceivable," and then opine whether the officers' actions "constituted excessive and unnecessary force." "[E]vidence that merely tells the jury what result to reach is not sufficiently helpful to the trier of fact to be admissible." *Kostelecky v. N.L. Acme Tool*, 837 F.2d 828, 830 (8th Cir. 1988).

### 2. The Officers' Actions "Were Inconsistent with Department Standards and Expectations"

Apparently, Waller will testify that the "standards and expectations" of the Dubuque Police Department is to use minimal force.[10] Specifically, Waller will testify that "verbalization or verbal commands are the first step in gaining compliance." Waller's report is silent regarding whether the policy is included in a written document, or simply complies with standard police practice.

The Court believes Waller is qualified, by training and experience, to render appropriate opinions regarding police procedure. Accordingly, Waller will be permitted to testify regarding the standards and expectations of the Dubuque Police Department, if they are known to him, and opine regarding whether they are consistent with standard police practices. For example, Waller may testify that appropriate police practice requires verbal commands as the first step in gaining compliance, and that officers "shall not escalate to a more severe application without first exhausting the minimum amount of force."

It is for the jury to determine, however, whether the officers complied with appropriate police procedures in this case. The facts surrounding this incident are hotly contested. The jury must weigh the credibility of the witnesses and, together with all of the other evidence, determine whether the officers "escalated" the use of force without first attempting to gain compliance using verbal commands. Accordingly, Waller will not be permitted to adopt those facts which he finds most credible and opine that the officers' actions "were inconsistent with department standards and expectations with regard to the use of minimal force."

### 3. Compliance with The Law Enforcement Code of Ethics

In his report, Waller states his third opinion as follows: "The reckless, unnecessary, untimely, and provocative actions of Officers Leitzen and Schlosser provided

---

[10] *Id.* at 6.

10

an excuse to use physical force against Mr. Kennedy." It seems apparent, however, that Waller is not *actually* asserting that the officers' actions "provided an excuse" to exercise physical force. Instead, it would appear Waller is asserting that the officers' "manner" was inconsistent with *The Law Enforcement Code of Ethics*.

According to Waller's report, *The Law Enforcement Code of Ethics* – which was incorporated into the Dubuque Police Department General Orders Manual – was promulgated by the International Association of Chiefs of Police and recommended as a professional standard of conduct by the Commission on Accreditation for Law Enforcement Agencies. As set forth above, Waller may testify generally regarding proper police practices and procedures. To that end, he may testify regarding *The Law Enforcement Code of Ethics* and opine regarding its applicability to accepted police practices. Because the facts surrounding these events are substantially disputed, however, Waller will not be permitted to opine that the officers failed to comply with accepted practice.

### 4. *Dubuque Police Department Practice is Inconsistent with Its Stated Policies*

Waller's fourth opinion is that "the actual practice of the Dubuque Police Department is inconsistent with their stated policies." Specifically, Waller asserts (1) no internal affairs investigation was initiated, as required DPD General Order 03-25, (2) the force used by the officers here "was clearly inconsistent with the stated policy requirement regarding the use of minimal force in DPD General Order 10-01," and (3) because Officer Schlosser's use of the baton "was inconsistent with his training," DPD General Order 07-19 requires remedial training.

Regarding Waller's first allegation, whether the Dubuque Police Department conducted an investigation of the officers' use of force is not relevant to Plaintiffs' section 1983 claims. Waller's second assertion is substantially the same as his second opinion, discussed above, and need not be considered further here. Similarly, while Plaintiff may offer evidence regarding the training received by Schlosser, and Waller may testify

regarding the proper use of a baton, it will be for the jury to decide whether Schlosser's use of the baton was inconsistent with his training.

## V. SUMMARY

In summary, it appears that Waller is qualified, by training and experience, to render appropriate opinions regarding police practices and procedures. For example, Waller may testify regarding the use of force and proper police procedures, including the use of a baton. Waller will not be permitted to testify, however, regarding whether the officers' actions in this case constituted excessive and unnecessary force. Similarly, Waller is prohibited from testifying that the officers failed to comply with Dubuque Police Department practices requiring the employment of minimal force. While Waller can testify generally regarding the nationally accepted standards of police practice, as found in *The Law Enforcement Code of Ethics*, he may not render any opinion regarding whether the officers in this case were compliant with those standards. Finally, whether the Dubuque Police Department conducted an internal affairs investigation following the incident is irrelevant. In short, the jury must hear the evidence, decide what testimony to believe, and then determine whether the force employed by the officers in arresting Kennedy was excessive.

## VI. ORDER

FOR THE REASONS SET FORTH ABOVE, the Motion to Strike Testimony of Dennis Waller (docket number 19) filed by the Defendants is **GRANTED** in part and **OVERRULED** in part, as set forth above.

DATED this 10th day of December, 2012.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA